UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LORRAINE PARKS**,                    Case No. 1:13-CV-00118-KI

        Plaintiff,                 OPINION AND ORDER

  v.

**COMMISSIONER OF SOCIAL
SECURITY**,

        Defendant.

    Tim Wilborn
    Wilborn Law Office, P.C.
    P.O. Box 370578
    Las Vegas, NV 89137

        Attorney for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon
    Ronald K. Silver
    Assistant United States Attorney
    1000 S.W. Third Ave., Suite 600
    Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

Erin F. Highland
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Lorraine Parks brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Parks filed applications for DIB and SSI on March 17, 2008.[1] Tr. 204, 208. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Parks, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"). On January 21, 2010, the ALJ issued a decision finding Parks is not disabled within the meaning of the Act and therefore not entitled to benefits.

The Appeals Council remanded this decision to the ALJ and, on August 16, 2011, Parks appeared and testified before the ALJ a second time. On October 19, 2011, the ALJ issued a decision finding Parks not disabled. This decision became the final decision of the

---

[1] In his decisions, the ALJ incorrectly referenced March 6, 2008 as Parks' filing date. Tr. 12, 112.

Page 2 - OPINION AND ORDER

Commissioner when the Appeals Council declined to review the decision of the ALJ on November 19, 2012.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

§§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

Page 4 - OPINION AND ORDER

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

**THE ALJ'S DECISION**

At step one, the ALJ concluded Parks had engaged in substantial gainful activity since her alleged disability onset date of March 1, 2007.[2] He identified diffuse idiopathic skeletal hypertosis ("DISH"), fibromyalgia, diabetes mellitus, arthritis of the lumbar spine, possible carpal tunnel syndrome, right shoulder tendonitis or impingement, and obesity as severe impairments. The ALJ also found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. In the end, the ALJ found Parks can perform light work, with the exception that she can only perform frequent–not constant–bilateral handling maneuvers and cannot perform frequent overhead work with the right arm. As a result, he concluded Parks can return to her past relevant work as a companion.

---

[2] In the ALJ's first decision, he indicated Parks had amended her onset date of disability to October 29, 2007, but the second decision does not reference this amendment. Compare Tr. 112 with Tr. 12.

## FACTS

Parks was 56 years old on her alleged disability onset date of March 1, 2007.[3] She had a GED. Until October 29, 2007, she had worked at a golf course setting up tee times, taking greens fees, and sometimes cooking food and serving food and beer. She explained she stopped working there because, "I was having a difficult time with it because of the weather. When I did have to go outside the weather was bothering me quite a bit. So when it started to get to the rainy, snowy season I was laid off. It was a mutual decision." Tr. 59.

After a three month break, Parks began providing live-in home health care to her ex-husband and was compensated by the State for her work. She kept track of his medications, prepared meals for him, provided light housekeeping services, and attended doctors' appointments with him. She was authorized by the State to work 38 hours a week; she was paid for 15 hours for being on-call 24 hours a day and the remainder she was actually helping her ex-husband. Tr. 65 (explaining she was paid for 30 hours every two weeks for her 24-hour availability). During the time she was on-call, she spent most of her time sleeping.

Parks does not challenge the ALJ's findings with respect to the medical record. In summary, Parks was treated by Kristin K. Miller, M.D., during the relevant years. Dr. Miller saw Parks once in 2007, three times in 2008, twice in 2009, and three times in 2010. She treated Parks' diabetes, right-shoulder bursitis, and DISH symptoms at various times with Celebrex, Lyrica, Flexeril, Xanax, oral medication for her diabetes, and one injection in the shoulder that provided only three weeks of relief.

---

[3]If her onset date of disability is in October, she was 57 years old.

Page 6 - OPINION AND ORDER

Dr. Miller referred Parks to David I. Dryland, M.D., in January 2009. Dr. Dryland saw Parks on two occasions. When he examined her, he found she had a normal gait, and that her joints displayed good stability, range of movement, without effusions, warmth, or tenderness with the exception of decreased range of motion in her cervical spine and in her right rotator cuff. He identified 18 of 18 tender points when he tested her for fibromyalgia. An x-ray revealed decreased spine density, was significant for an old T11 compression fracture, and showed significant spurring in the mid-lower cervical spine. He opined that diffuse spurring in the thoracic and lumbar spine was consistent with DISH. His impression was that Parks has "classic fibromyalgia/DISH/OA [osteoarthritis] overlap. Also likely rotator cuff disease." Tr. 486.

During a psychological evaluation undertaken by Michael R. Villanueva, Psy.D., Parks described daily activities including doing the laundry, dishes, and light housekeeping. Dr. Villanueva commented that Parks was able to remain seated and concentrate on questions. He noted a history of alcohol abuse and depression, but pointed out she could "concentrate well, tracks the interview, and provides information in a spontaneous fashion. She is alert and oriented." Tr. 492.

Daniel A. Saviers, M.D., undertook a physical examination of Parks at the request of Disability Determination Services. Parks reported she could sit for one to two hours, could stand for 20 to 30 minutes, and could walk for ten minutes. Dr. Saviers noted she could move from a sitting position to a standing position without using her arms, she had no problem tandem walking, heel and toe walking, or standing on one leg. Her motor strength was 5/5. She had some tenderness in her shoulders, but her rotator cuff muscles tested strong, and there was no evidence of instability in the shoulders. Her cervical and lumbar range of motion was normal.

Page 7 - OPINION AND ORDER

She tested positive for 7 of 18 points for fibromyalgia, but without pain. His impressions were bilateral carpal tunnel syndrome, previous laceration to the left index figure with excellent results status post repair, fibromyalgia by history, no evidence of neuropathy, complaints of arthritis in the right side, suspect a mild bursitis in the right shoulder, and some mild crepitus of the patellofemoral joint of the right knee. He opined, "Suspect that her walking restrictions are an underestimate and that she can walk longer. Also suspect that she could lift more as there is no obvious weakness or balance impairments. Suspect that forceful gripping, grasping, pushing and pulling might exacerbate some of her carpal tunnel syndrome symptoms." Tr. 497.

Robert T. Bents, M.D., treated Parks' right shoulder impingement and performed surgery on her right knee. Parks reported 90 percent relief in her shoulder after initiating a home exercise program that included pool exercises. She also reported being happy with the results of knee surgery, which occurred August 30, 2010, and was anxious to return to bicycling and swimming.[4]

At the first hearing, Parks complained of back and leg problems, and pain in her upper body. She testified it is painful to brush her hair, she cannot hold up a newspaper for more than a couple of minutes, and she cannot engage in any weight-bearing activities. She also described pain from fibromyalgia, which meant chest pains one day, pain in her right calf another day, and

---

[4]Parks included in her medical summary a psychodiagnostic assessment completed by Edwin E. Pearson, Ph.D., on June 12, 2012, which was after the ALJ's second decision but before the Appeals Council's review. Dr. Pearson gave the following diagnostic impressions: dysthymic disorder, alcohol dependence, malingering (provisional), and adjustment disorder with anxiety. He specifically commented that given Parks' endorsement of "an unusually broad range of psychological symptoms, which were not evident in interview," malingering is a possibility. Tr. 387. Dr. Pearson's observations are further support for my opinion that the ALJ did not err in finding Parks less than credible, as I indicate below. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence).

lower back pain a third day. Her "insidious" symptoms included anxiety, pain, and a short fuse. Tr. 79. She described an inability to lift with her right arm because of right shoulder bursitis. She testified she can sit for 20 to 30 minutes and can stand and walk for 20 to 30 minutes. She testified that she watches television and walks to the post office a block and a half away.

At the second hearing, Parks explained that she had continued to work as a caregiver for her ex-husband through 2010 and into 2011, but the position came to an end because of "budget restraints." Tr. 31. She still lives with her ex-husband but no longer provides care for him. She occasionally acts as a greeter at the Gold Hill Historical Society Museum. She spends her day watching television, reading the paper, and playing on her computer. She testified to right knee pain, with the ability to stand for only 10 to 15 minutes, and weakness and restriction of motion in her right shoulder.

## DISCUSSION

I.  The ALJ's Step Four Finding

Parks takes issue with the ALJ's finding that she can perform her past relevant work; she argues the job of companion was not substantial gainful activity, and therefore not past relevant work, because the ALJ improperly considered vacation pay as part of her earnings.

The Commissioner concedes the ALJ incorrectly included vacation pay in Parks' earnings; subtracting out vacation pay, Parks' earnings for 2009 and 2010 fell below presumptive SGA thresholds. Nevertheless, the Commssioner urges a finding of harmless error.

Past relevant work is work performed within the last 15 years, which was substantial gainful activity ("SGA") and lasted long enough to learn to do it. 20 C.F.R. §§ 404.1565(a), 416.965(a). Work is SGA if (1) it involves significant physical or mental activity; and (2) it is

Page 9 - OPINION AND ORDER

done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572, 416.972. Earnings made under or over threshold levels raise a presumption that the work either was or was not SGA. However, when earnings fall below the threshold, the Commissioner may rebut the presumption by pointing to substantial evidence, aside from earnings, that the work was SGA. Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001); 20 C.F.R. §§ 404.1574(a)(1) ("the fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful activity"), 416.974(a)(1) (same). Other relevant factors include the nature of the work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work. 20 C.F.R. §§ 404.1573, 416.973. Past relevant work can be part time, Katz v. Sec'y of HHS, 972 F.2d 290, 292 (9th Cir. 1991), totally unpaid, Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990), or on a substitute basis, Byington v. Chater, 76 F.3d 246, 250 (9th Cir. 1996).

Here, because the ALJ miscalculated Parks' earnings, he failed to address the presumption that Parks' work was not SGA. Although the Commissioner contends the ALJ did not rely solely on Parks' earnings to find her capable of performing her past work, the ALJ's decision reflects the contrary. The ALJ found only that "[t]his work was performed at substantial gainful activity levels in the past 15 years for long enough to learn the work." Tr. 20. As a result, because the ALJ incorrectly found Parks' earnings were presumptively SGA, the ALJ failed to set forth any other facts showing Parks' work as a companion qualified as SGA.

Because the ALJ incorrectly treated Parks' past work as SGA without a proper explanation, the ALJ erred in considering the companion job past relevant work. The error was not harmless since the ALJ did not evaluate Parks' ability to perform other work in the national

Page 10 - OPINION AND ORDER

economy. However, as the Commissioner notes, there are facts in the record from which the ALJ could conclude that Parks' past work was performed as SGA. The matter should be remanded so the ALJ may reassess, using the factors set forth in 20 C.F.R. §§ 404.1573 and 416.973, whether Parks' past work as a companion constitutes SGA despite the earnings presumption to the contrary. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002) (court has discretion to remand the case for additional evidence and findings or to award benefits); Harman, 211 F.3d at 1178-79 (court's decision generally turns on the utility of further proceedings; issues to be resolved warrants remand).

II.     Credibility

Parks challenges the ALJ's credibility finding, as well. Since I remand for reevaluation of Parks' past work, I address this argument to simplify the record on remand.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on

substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

As an initial matter, the ALJ relied on Parks' application for and receipt of unemployment insurance benefits as an indication that she was representing to the State that she was ready, willing and able to perform full-time work. The Commissioner concedes this was not a proper credibility factor when the evidence does not show Parks was holding herself available for full-time work. Def.'s Br. 11 n.2 (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)) (absent evidence claimant asserted availability for full-time work, unemployment compensation not a credibility consideration).

The ALJ, however, gave other clear and convincing reasons, supported by substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (fact that ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean the ALJ's entire credibility assessment is improper). For example, he pointed out Parks' medical record and conservative treatment were inconsistent with her self-reported limitations. Tr. 18-19 (e.g., Dr. Dryland found normal strength and range of motion; Parks declined an x-ray or orthopedic evaluation believing it would not change her management; Dr. Saviers' concluded Parks could do more than Parks' reported; Parks experienced 90 percent relief after physical therapy sessions for her shoulder). Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its

Page 12 - OPINION AND ORDER

disabling effects. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Additionally, evidence of conservative treatment is sufficient to discount a claimant's testimony on the severity of an impairment. <u>Parra</u>, 481 F.3d at 750-51.

Parks' activities also suggested she was less limited than she purported to be. She was doing "quite well with a home exercise treatment," she was happy with the results of knee surgery and was anxious to get back to bicycling and swimming, and she worked as a caregiver for her ex-husband. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (less than candid testimony a credibility factor).

Since these clear and convincing reasons for finding Parks less than credible about her limitations are supported by substantial evidence, I find no error.

III.     <u>Lay Testimony</u>

Parks challenges the ALJ's treatment of the lay witness statement offered by her ex-husband, Tom Daily. He completed a function report explaining that he saw Parks at least once a week, and that she spends her day drinking coffee, taking medication, eating meals, and watching television. He reported Parks had no problems with personal care or preparing her own meals. She does very little house or yard work because she cannot lift or stand for very long. She shops for groceries, goes outside everyday, and visits her grandchildren and daughter once a month. He identified positional limitations, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. He specifically noted Parks cannot lift anything and can only walk one or two blocks. She is argumentative with authority figures and "freaks out when she doesn't get her own way."

Tr. 326.

The ALJ rejected Daily's statement by saying generally that "the third-party statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons stated in this decision." Tr.18.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). The Commissioner concedes the ALJ's failure to give a germane reason for rejecting Daily's statement was error, but argues it was harmless because Daily did not identify any limitations beyond what Parks described.

Although the ALJ's error may be harmless under Molina, 674 F.3d at 1122, since I must remand the case to the ALJ to re-evaluate whether Parks's work as a companion qualifies as past relevant work, I also direct him to assess whether Daily described any limitations greater than Parks herself described and to otherwise assess the value of Daily's statement.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this    23rd    day of April, 2014.

                /s/ Garr M. King
                Garr M. King
                United States District Judge